Filed 1/29/26  In re M.Z. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.Z., <br><br> a Person Coming Under the Juvenile Court Law. | B344543 <br><br> (Los Angeles County <br> Super. Ct. No. 24CCJP03571) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> N.W., <br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

N.W. (mother) appeals the jurisdictional findings made by the juvenile court under Welfare and Institutions Code section 300,[1] arguing they are not supported by substantial evidence. Mother also challenges the juvenile court's dispositional order removing her child (M.Z.) from her care. We affirm, concluding that the juvenile court's jurisdictional findings and removal order are supported by substantial evidence. As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

## DISCUSSION

I. *Justiciability*

The original section 300 petition set forth counts against M.Z.'s mother and father. The juvenile court sustained jurisdiction on all counts against both parents. Only mother appealed; father is not a party to this appeal. Respondent, the Los Angeles County Department of Children and Family Services (Department), argues mother's appeal is non-justiciable, correctly pointing out that where there is an uncontested basis for jurisdiction under section 300, we need not consider whether the evidence would also support other alleged statutory grounds for jurisdiction.

We agree that in this instance, our review of the jurisdictional findings against mother is discretionary. (*In re D.P.* (2023) 14 Cal.5th 266, 283.) Mother asks that we nevertheless exercise our discretion to hear her appeal.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Appellate courts have "inherent discretion to decide certain challenges to juvenile court jurisdictional findings, notwithstanding mootness." (*In re D.P.*, *supra*, 14 Cal.5th at p. 285.) Several factors may be considered in deciding whether to review jurisdictional findings in an otherwise moot appeal. (*Id.* at pp. 283–286.) These factors include whether the challenged jurisdictional findings serve as the basis for dispositional orders that are also challenged on appeal. (*Id.* at p. 283.) Other factors include whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct and the reason why the appeal became moot. (*Id.* at pp. 285–286.) These factors are not exhaustive, and no single factor is dispositive as to whether this court should exercise its discretion. (*Id.* at p. 286.)

On appeal, mother challenges the juvenile court's dispositional order removing M.Z. from her care. As the findings against mother form the basis of the juvenile court's removal order, we elect to exercise our discretion to reach the merits of mother's appeal.

II.     *Legal Standards*

A.     *Jurisdictional Findings*

At the jurisdictional stage, the juvenile court must determine by a preponderance of the evidence if a child is described by section 300. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) The juvenile court here asserted jurisdiction under section 300, subdivision (b)(1).

Section 300, subdivision (b)(1), allows a juvenile court to exercise jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of [his or her] parent . . . to adequately supervise or protect the child." Subdivision (b)(1) requires only that a parent

3

has failed or is unable to adequately supervise or protect the child. The statute does not require negligent or culpable conduct by the parent. (*In re R.T.* (2017) 3 Cal.5th 622, 629–630 (*R.T.*).)

To show the child faces a risk of harm at the time of the jurisdiction hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

Yet, "[t]he juvenile court need not wait until a child is seriously injured to assume jurisdiction if there is evidence that the child is at risk of future harm from the parent's . . . conduct." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) The court may consider past events as an indicator of whether the child faces a current risk of harm because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) Similarly, a parent's denial of wrongdoing or failure to recognize the negative impact of their conduct is also relevant to determining risk under section 300. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036.)

We review a juvenile court's jurisdictional findings for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) We will affirm the findings if they are supported by evidence that is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) We review the record in the light most favorable to the court's findings and draw all reasonable inferences from the evidence in favor of those findings. (*R.T.,*

4

*supra*, 3 Cal.5th at p. 633.) "Evidence from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

B.     *Dispositional Removal Order*

Section 361, subdivision (c)(1) provides the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." The court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal." (§ 361, subd. (e).)

"It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate. [Citation.] 'The focus of the statute is on averting harm to the child.'" (*In re D.D.* (2019) 32 Cal.App.5th 985, 996.) In determining whether a child may be safely maintained in the parent's physical custody, "the [juvenile] court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) The juvenile court must consider "'not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.'" (*In re M.V.* (2022) 78 Cal.App.5th 944, 967.) "The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*In re T.V., supra,* 217 Cal.App.4th at p. 135, citing § 361, subd. (c)(1).)

5

We affirm the removal order if it is supported by substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.) When conducting a substantial evidence review of a finding made under the clear and convincing evidence standard: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012 (*O.B.*).)

III. *Substantial Evidence Supports the Jurisdictional Findings and Dispositional Orders Against Mother*

Three counts were alleged against mother in the section 300 petition filed by the Department. Count b-2 alleged mother "knew or reasonably should have known" that father was under the influence of methamphetamine while M.Z. was in his care and failed to protect M.Z. Count b-3 alleged mother had an "extensive history of substance abuse, including methamphetamine, marijuana and Xanax" and was also a "current abuser" of all three substances. Mother also kept methamphetamine in her home. Count b-4 alleged that mother suffered from several mental and emotional issues, including depression, extreme anxiety, and panic attacks.

6

It further alleged that mother failed to take the medication prescribed to her to treat those conditions or otherwise maintain consistent medical health treatment to address those conditions. The juvenile court sustained each count asserted against mother and entered a dispositional order removing M.Z. from mother's care. M.Z. was 12 years old at the time of removal.

On appeal, mother raises identical arguments regarding the juvenile court's jurisdictional findings and removal order. Mother does not dispute the allegations of substance abuse or mental health issues. Instead, mother contends there was not substantial evidence showing that her substance abuse or mental health problems posed a sufficient risk of harm to M.Z. to justify jurisdiction under section 300 or removal under section 361. We disagree.

While mother addresses her substance abuse and mental health issues separately, the record establishes that they are interrelated. Accordingly, we discuss them together.

During the Department's investigation, mother admitted that she suffers from extreme anxiety, depression, and panic attacks. These issues significantly impacted mother's daily life. Mother described herself as having panic attacks nearly every day when she wakes up. She also stated that her depression left her unable to get out of bed in the morning.

Mother also admitted that she previously saw a psychologist who prescribed her five different medications to address her mental health issues. Mother told the Department that she decided to forgo her prescription medication and instead self-medicated with substances such as Xanax and methamphetamine because she "figured that doing methamphetamine was better than taking five different medications." Mother admitted that she used methamphetamine every other day and used Xanax every day. She also

told the Department that she had been addicted to Xanax for 10 years.  She also reported experiencing withdrawal symptoms when she tried to stop taking Xanax.

Mother acknowledged that she was unable to function without methamphetamine or Xanax, stating that she could not get out of bed in the morning without using one of those substances.  Yet, mother also downplayed the significance of this drug dependency.  For example, mother equated her methamphetamine use to drinking coffee in the morning for energy.  Mother also admitted to using Xanax while caring for M.Z., but minimized its significance, stating, "it is not like I took it in front of her."

There is evidence in the record demonstrating that mother's substance abuse and mental health issues cumulatively impacted her ability to care for M.Z. and therefore created a risk of harm to M.Z.  For example, mother was often late or unable to fulfill her responsibilities to M.Z.  As a result, mother was not a custodial parent and M.Z. instead lived with father in her paternal grandmother's house.  M.Z. reported to the Department that she only saw her mother infrequently when mother would pick her up from school and take her home.  M.Z. also reported that mother was frequently late to pick her up.  Mother corroborated these reports and recounted to the Department that she recently tried to pick M.Z. up, but M.Z. refused to come with her because she was eight hours late.  While mother was supposed to pick M.Z. up at 2:00 p.m., she instead arrived at 10:00 p.m.  Mother herself attributed her tardiness to her "extreme anxiety."  Mother also recounted a separate incident where she was supposed to take M.Z. to school in the morning, but

could not get out of bed. After it was too late to take M.Z. to school, mother turned to methamphetamine and marijuana to self-medicate.[2]

M.Z. also reported that she did not like spending time with mother and described mother's behavior as "erratic" and "agitated." M.Z. also said that mother could "not speak in coherent sentences" and often slept for extended periods of time in the middle of the day. M.Z.'s caregiver similarly reported that mother was late for her scheduled visits with M.Z. and acted erratically during visits. These observations were corroborated by Department social workers, who characterized mother as "fidgety and anxious," "pacing back and forth," "present[ing] with scattered thought processing," and "chang[ing] topic[s] and idea[s] . . . mid-sentence." The Department also noted that during visits mother was acting inappropriately by openly discussing the case with M.Z. or in her presence. Mother admitted that she felt "overwhelmed" during her visits with M.Z.

There is also evidence in the record suggesting she presented a risk of physical harm to M.Z. When the Department first spoke to mother, mother was bleeding from her hand. Mother could not explain what caused her injury, stating that she recently had an anxiety attack and "[could] not remember what happened during [it]."

We also note there is no evidence suggesting mother took any steps to address her substance abuse or mental health issues during the proceedings below. Mother did not enter a substance abuse treatment program, seek mental health services, or resume taking her prescribed medications. (*In re Cole C., supra,* 174 Cal.App.4th at p. 918 [parent's failure to acknowledge underlying problem supports removal].) Further, while mother volunteered

---

[2] Mother also admitted that she was on final warning at work for chronic tardiness.

to drug test for the Department, she missed all five of the tests scheduled for her. (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["a missed drug test, without adequate justification, is 'properly considered the equivalent of a positive test result'"], disapproved of on another ground in *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18; accord, *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186.)

In reviewing for substantial evidence, we must view the record in the light most favorable to the juvenile court's removal order. (*O.B.*, *supra*, 9 Cal.5th at pp. 1011–1012.) Viewed in this light, the record shows that mother's dependence on—and addiction too—illicit substances prevented her from taking the medications prescribed to her to treat her severe anxiety and depression. Mother's refusal to address her mental health issues through the use of proper prescription medication, counseling, therapy, or other services directly impacted her ability to get out of bed in the morning without abusing illicit substances. This, in turn, impacted her ability to care for or supervise M.Z. There was also evidence that mother posed a risk of physical harm to M.Z. as mother apparently could not control herself, or recollect what she did, while experiencing severe episodes of anxiety.

The case law cited by mother bears no similarity to the facts before us here. In *In re David M.* (2005) 134 Cal.App.4th 822, 829–830, the appellate court concluded that a single positive drug test during pregnancy was insufficient to support jurisdiction under section 300, subdivision (b)(1), where there was no evidence that this single incident of drug use affected the mother's ability to care for her child.

Similarly, in *In re L.C.* (2019) 38 Cal.App.5th 646, 649–650, a legal guardian's occasional methamphetamine use outside the child's home was insufficient to support jurisdiction under subdivision (b)(1) where the

evidence showed his drug use did not interfere with his ability to care for the child. In reaching this conclusion, the court noted that the guardian was actively involved in the child's care, had sought treatment for substance abuse, and subsequently tested negative for methamphetamine on multiple occasions.

In *In re J.N.* (2010) 181 Cal.App.4th 1010, 1022, a single incident of drunk driving was held insufficient to support jurisdiction under (b)(1) where the evidence showed that, aside from the one incident, the parents rarely drank and therefore did not present a current risk of future harm from alcohol abuse.

And in *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1345–1346, the appellate court concluded that a single positive test for marijuana, coupled with some missed drug tests, was insufficient to support removal where the petition did not allege substance abuse and the evidence showed that mother had completed parenting courses and counseling, completed drug treatment, acted appropriately during visits, and had otherwise substantially complied with her reunification plan.

Here, by contrast, mother had a decade-long history of substance abuse and addiction, which, coupled with her untreated mental health issues, left her unable to care for or adequately supervise M.Z. Mother took no steps to address these concerns and instead continued to eschew her prescribed medication in favor of the daily abuse of either Xanax or methamphetamine. The cases cited by mother bear no similarity to the facts of this case.

Based on the record before us, we conclude that substantial evidence supports the juvenile court's jurisdictional findings against mother as well as the dispositional order removing M.Z. from her care.[3]

## DISPOSITION

The juvenile court's jurisdictional findings and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


TAMZARIAN, J.

---

[3]    In her reply brief, mother argues for the first time that the juvenile court could not remove M.Z. from her care because she was not a custodial parent.  Mother forfeited any claim of error in this regard by failing to raise this objection below or in the opening brief on appeal.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re T.G.* (2013) 215 Cal.App.4th 1, 14; *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276.)

12